IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01271-WDM-KMT

SPORTSMANS WAREHOUSE, INC.

      Plaintiff,

v.

STEVEN G. FAIR, and
STEPHEN C. LEBLANC,

      Defendants.

STEPHEN C. LEBLANC,

      Cross Claimant,

v.

STEVEN G. FAIR,

      Cross Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This matter is before the court on "Defendant and Cross-Claimant Stephen C. LeBlanc's

Motion for Summary Judgment" ("LeBlanc SJ Mtn." [Doc. No. 73, filed October 26, 2007]);

"Defendant and Cross-claimant Stephen C. Leblanc's Motion for Order Setting Oral Argument

on Motion for Summary Judgment" ("LeBlanc SJ Mtn." [Doc. No. 151, filed January 30, 2008]);

Steven G. Fair's "Expedited Motion to Dismiss under FRCP 12(b) for Failure to State a Claim

Upon Which Relief May be Granted" ("Fair Mtn. Dism." [Doc. No. 158, filed January 29, 2008]), **and**[1] "First Amended Expedited Motion to Dismiss under FRCP 12(b) for Want of Jurisdiction and for Failure to State a Claim upon Which Relief May be Granted" ("Fair Mtn. Dism. 2d" [Doc. No. 231, filed February 25, 2008]); "Defendant and Cross-Defendant Steven George Fair's Motion to Dismiss Cross-Claimant LeBlanc's Complaint of Defamation for Failure to State a Claim Upon Which Relief May be Granted Pursuant to FRCP Rule 12(b)(6)" [Doc. No. 289, filed April 28, 2008]; "Defendant/Cross Defendant Fair's Motion for Declaratory Judgment of Infringement" ("Fair Decl. J. Mtn." [Doc. No. 224, filed February 21, 2008]); "Defendant and Cross-claimant Stephen C. Leblanc's Motion to Strike Defendant/Cross Defendant Fair's Motion For Declaratory Judgment of Infringement" [Doc. No. 227, filed February 21, 2008];and "Plaintiff Sportsman's Warehouse, Inc.'s Motion for Summary Judgment" ("Sptm. Mtn. SJ" [Doc. No. 271, filed March 31, 2008]).

## I.  Background

Given the redundant and repetitive nature of Steven George Fair's filings in this court, conventional procedural history would be lengthy, labored and singularly unhelpful. However, a synopsis of events will set the parties' pleadings in context.

Stephen C. LeBlanc is a sculptor specializing in realistic bronze recreations of wildlife. Several of his scuptures are featured as "monumental," or larger than life size, pieces which appear in front of Sportsman's Warehouse locations through out the country. In or about March

---

[1]  These two pleadings are almost identical in content.

2005, Sportsman's Warehouse began receiving correspondence from Mr. Fair. Initially, Mr. Fair contacted Sportsman's Warehouse attempting to sell his sculpture. (Cross Defendant Steven George Fair's Answer to Stephen C. LeBlanc's Answer and Crossclaim (hereinafter "Fair Ans." [Doc. No. 103]) at ¶ 17; Defendant/Cross-Defendant Fair's Response to Sportsman's Warehouse, Inc.'s Motion for Summary Judgment (hereinafter "Fair Rsp. to S.W. Sum. J" [Doc. No. 287]), Exh. A-11, 5 pages). At that time Fair sent a portfolio which contained a picture of his elk sculpture "Royal Entrance" to Sportsman's Warehouse; Sportsman's Warehouse declined to buy artwork from Mr. Fair. (*Id.*) Approximately two years later Fair sent correspondence to both Stephen C. LeBlanc and Sportsman's Warehouse accusing Mr. LeBlanc of copying the sculpture outside the Sportsman's Warehouse in Portland, Oregon, entitled "I'm the Boss," from Fair's small size sculpture, "Royal Entrance." (Fair Rsp. to S.W. Sum. J, Exh. A-2.) Between the first contact attempting to sell his sculpture to Sportsman's Warehouse and the second, Fair filed a copyright registration on "Royal Entrance." Both "I'm the Boss" and "Royal Entrance" depict one elk with fully developed antlers standing on rocks with one front leg raised to indicate movement or walking. (See pictures of the accused sculptures and Fair's "Royal Entrance" attached as exhibits to LeBlanc's Motion for Summ. J.) Both sculptures depict the elk in flehmen - a condition where male elk, as well as certain other mammals, curl their upper lip during the annual autumn rutting season to facilitate the transfer of scents to olfactory sense organs. (Fair Rsp. to S.W. Sum. J., Affidavit of Fair, ppg. 1-5.) The particular expression of live male elk in flehmen can be mistaken by the casual observer as elk bugling.

Fair also claimed that LeBlanc's sculpture of another elk entitled "The Challenger," a complementary monumental sculpture of an elk designed to be facing "I'm the Boss" was a copy of Fair's small sculpture "Royal Entrance."  (Le Blanc Answer and Cross Claim at ¶14.)

Subsequent to Mr. Fair's second correspondence with it's accusation of copyright infringement, Sportsman's Warehouse initiated this lawsuit against both artists, seeking declaratory judgment "for the purpose of determining questions of actual controversy between the parties" under the Declaratory Judgement Act, 28 U.S.C. § 2201.  (Compl. [Doc. No. 1].) Stephen C. LeBlanc answered the complaint on August 3, 2007 and filed cross claims against Steven Fair for Defamation and Declaratory Judgment of Non-Infringement.  After a number of attempts to answer the complaint and the cross claims, Fair filed an Answer to the complaint and to LeBlanc's cross claim on November 26, 2008.  [Doc. No. 103].  As is typical of Mr. Fair's filings, he filed another Answer as well.  [Doc. No. 154, filed January 31, 2008].

## II.     Standard

### A.     Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2006); *see Anderson*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts

to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete*

*Works*, 36 F.3d at 1518 (*citing Celotex*, 477 U.S. at 325). The nonmoving party may not rest

solely on the allegations in the pleadings, but must instead designate "specific facts showing that

there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006);

*Anderson*, 477 U.S. at 249 (on summary judgment, the court is not permitted on "to weigh the

evidence and determine the truth of the matter;" court's role is limited "to determin[ing] whether

there is a genuine issue for trial"). A fact in dispute is "material" if it might affect the outcome

of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might

lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d

837, 839 (10th Cir. 1997) (*citing Anderson*, 477 U.S. at 248).

    The court may consider only admissible evidence when ruling on a summary judgment

motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The factual record and reasonable inferences therefrom are viewed in the light most favorable to

the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th

Cir. 1998) (*citing Concrete Works*, 36 F.3d at 1517).

## B.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

    Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6)

(2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

5

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff or proponent, in this case Stephen C. LeBlanc in asserting his two claims against Steven G. Fair. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's (LeBlanc's) favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated a new "plausibility" standard for motions to dismiss, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

## C. Declaratory Judgment

The Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. A district court's decision to exercise its discretion and issue a declaratory judgment "will not be overturned absent a showing of clear abuse of ... discretion." *Nautilus Ins. Co. v. 8160 South Memorial Drive, LLC*, 436 F.3d 1197, 1199 (10th Cir. 2006) (quoting *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). The substance of a declaratory judgment is reviewed just like any other district court decision. *Id.*; 12 James Wm. Moore, Moore's Federal Practice § 57.101[2] (3d ed. 2005).

Whether LeBlanc infringed a copyright belonging to Fair on his sculpture "Royal Entrance" is at the heart of all the relevant claims. A ruling on summary judgment resolving the infringement issue, however, would not resolve all matters in the case, since LeBlanc's defamation claim would still be outstanding. Fair's motion to dismiss both of LeBlanc's claims against Fair is also addressed in this Recommendation.

To prevail on his assertion of copyright infringement by LeBlanc, Fair must establish that he owns a valid copyright and that LeBlanc copied original protectable elements of Fair's copyrighted work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir. 1996).

### III.    Analysis of Copyright Infringement Issues

#### A.    Copyright

"To promote the Progress of Science and useful Arts, by securing for limited Time to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," the United States Constitution empowers Congress to pass copyright laws. U.S. Const. Art. I § 8 cl. 8. The federal copyright laws are found in Title 17 of the United States Code. A copyright affords limited protection, however. It confers "only the sole right of multiplying copies." *Mazer v. Stein*, 347 U.S. 201, 218 (1954).

Copyright registration confers no right at all to the conception reflected in the registered subject matter. "Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea - not the idea itself." *Mazer* at 217. Accordingly, the prerequisites for copyright registration are minimal. A copyright registration is

accomplished simply by filing a claim and depositing copies of the work with the Register of Copyrights, 17 U.S.C. §§ 401 et seq. There is minimal administrative investigation or determination of the validity of the claim. The work offered for registration need only be the product of the registrant; so long as it is not a plagiarized copy of another's effort, there is no requirement that the work differ substantially from prior works or that it contribute anything of value. "The copyright protects originality rather than novelty or invention." *Id.* at 218.

### B. Effect of Copyright Registration

The Copyright Act of 1976 provides that, with respect to published works, a Copyright Office Certificate of Registration obtained within five years of first publication "constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). A registration made more than five years after first publication of the work is still valid and subject to whatever weight the court, in its discretion, deems appropriate. *Religious Technology Center v. Netcom On-Line Communication Services, Inc*., 923 F. Supp. 1231, 1242 (N.D.Cal. 1995) (awarding the presumption of validity to copyrighted works registered more than five years after publication). Even in an event where the presumption of validity is applicable, however, "[w]here other evidence in the record casts doubt on the question, validity will not be assumed," *Bridge Publications, Inc. v. F.A.C.T.Net, Inc*., 183 F.R.D. 254, 259 (D.Colo. 1998) (quoting *Durham Industries Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). *See also Tempo Music, Inc. v. Famous Music Corporation*, 838 F. Supp. 162, 167 (S.D.N.Y. 1993).

Steven Fair filed his copyright registration on October 2, 2006, eleven years after he claims his first publication of "Royal Entrance" in 1995, and nine years after the first proven publication of "Royal Entrance" in the 1997 Wild Wings Catalogue as referenced *infra*. (Cert of Registration, Doc. No. 73-5; Fair Rsp. S.W. Sum. J., Exh. A-12, 1997 Wild Wings Originals Catalogue). It is notable that Mr. Fair did not even file for copyright registration on "Royal Entrance" until one and one-half years after he had submitted his portfolio containing pictures of "Royal Entrance" to Sportsmans Warehouse and Sportsmans Warehouse had declined to commission works from Mr. Fair. (Fair Ans./Affirmative Defenses ¶ 17.) Under the circumstances I find there are no grounds to extend the presumption of validity to this copyright registration and that the presumption of validity does not, therefore, apply to Fair's Certificate of Registration for "Royal Entrance."

### C.      Effect of Fair's Claimed First Publication Date for "Royal Entrance"

It is undisputed that Stephen C. LeBlanc created a small (maquette) elk sculpture in 1993 and sold it to Donald Roden in early 1994. (LeBlanc Declaration, Doc. No. 73-3 [hereafter LeBlanc Decl.] at ¶ 6; Roden Declaration, Doc. No. 73-14 [hereafter Roden Decl.] at ¶¶ 2-4.) Fair disputes that portion of the Roden Declaration which states that the maquette Roden purchased was named "I'm the Boss." Fair disputes that Roden's sculpture was the original maquette for the later created monumental sculpture purchased by Sportsman's Warehouse. (Fair Rsp. S.W. Sum. J., Exh. L.1-L.50 [Doc. No. 287-3, p. 52].) Fair insists that the small sculpture pictured in Exhibit A to Roden's Declaration is a maquette of "Looking for Trouble," a monumental sculpture pictured in Exhibit A-9 to LeBlanc's Motion for Summary Judgement

[Doc. No. 73-11]. Fair does not claim that "Looking for Trouble" infringed his copyright on "Royal Entrance." Fair does not dispute any other part of the Roden Declaration. Both Roden and LeBlanc claim the maquette purchased by Roden is named "I'm the Boss" and was the predecessor to the larger sculpture with the same name.

For purposes of considering these motions for summary judgment, the name given to the small sculpture bought by Roden is not material, even though disputed, and the court will hereafter refer to the sculpture purchased by Roden in early 1994 simply as the Roden sculpture. Assuming for purposes of summary judgment that the Roden sculpture was not the maquette for the accused monumental sculpture "I'm the Boss" displayed at several Sportsman's Warehouse locations, it is undisputed is that the fully finished Roden sculpture was displayed at a Ducks Unlimited show in February, 1994 in Overland Park, Kansas near Kansas City, Missouri and that Roden purchased the maquette in early 1994. (Roden Decl.)

It is undisputed that Exhibit A-7 to LeBlanc's Summary Judgment Motion [Doc. No. 73-9] is a picture of the monumental version of "I'm the Boss," one of the two pieces that Fair claims infringed his copyright on "Royal Entrance." The Roden sculpture (as pictured in its home setting, Exhibit A to Roden Decl.) looks almost identical to Exhibit A-7, "I'm the Boss - Monumental" and is identical in appearance to Exhibit A-6 to LeBlanc's Motion for Summary Judgment which is labeled as "I'm the Boss (Marquette)(sic)." To even the most casual observer, the Roden sculpture does <u>not</u> look like the elk sculpture pictured in Doc. No. 73-11,

which is undisputedly "Looking for Trouble" in its monumental form created in or around 1986.[2]

However, because other small sculptures undisputedly of "I'm the Boss" were purchased during

the years 1995 through 1997, whether the Roden sculpture is "I'm the Boss" is immaterial for

purposes of summary judgment.

     The undisputed record shows that  Steve Houy saw LeBlanc's sculpture "Looking for

Trouble" and wanted to purchase it, but could not do so because the editions were sold out.

Instead, he bought a maquette of  "I'm the Boss" – a sculpture he knew to be different from

"Looking for Trouble" –  in the fall of 1995.  (Fair Rsp. S.W. Sum. J, [287-3], p. 76.)  Houy

subsequently bought several more sculptures from LeBlanc.  (*Id*.)  David S. Mowatt purchased a

small bronze sculpture of "I'm the Boss" in 1995 and a life-size version of the same sculpture,

"I'm the Boss" in 1998.  (*Id*. at 78.)   Rusty S. Elston saw a monumental version of "Looking for

Trouble" at Pratt Park and liked it, but later saw "I'm the Boss" maquette and purchased it in

1996.  The Elstons have a neighbor who has a monumental of  "I'm the Boss" as well.  (*Id*. at

77.)

---

    [2] Fair himself describes "Looking for Trouble" as "straight head, straight neck, head high, combat/aggression moving forward toward another bull while bulging. . ." and "a head high nearly straight necked aggressive bull looking for a fight . . ." (Fair Rsp. to S.W. Sum. J., attachments, 278-3 at 54 and 58)  This description is accurate with respect to the sculpture depicted in Doc. No. 73-11, undisputedly LeBlanc's "Looking for Trouble - Monumental" created in 1986.  Fair's description does not at all fit the Roden elk sculpture (Doc. No. 73-14), nor does it fit Fair's "Royal Entrance" Doc. No. 271-3, or LeBlanc's "I'm the Boss" (Doc. No. 73-8 and 73-9) or "The Challenger" (Doc. No. 271-6, Exh. 7).  On the last four sculptures, all the elks hold their heads and necks much lower in a position almost parallel with the ground as opposed to "Looking for Trouble" where the neck is perpendicular to the ground.

It is undisputed that Cogswell Gallery began displaying "I'm the Boss" maquette version in 1995. (*Id.* at 74.) Cogswell Gallery was instrumental in putting together a deal for Mr. LeBlanc to create a monumental version of "I'm the Boss" in 1997 for Vail Associates who had seen the maquette version at Cogswell. (*Id.*) Love Patina Specialties made the original mold for the monumental "I'm the Boss" in 1998 and saw and photographed the original clay sculpture made by Stephen LeBlanc. (*Id.* at 75.)

Fair's copyright registration states that Fair did not first publically display his maquette of "Royal Entrance" until 2005, even though he created it in 1995. (Certificate of Registration, [Doc. No. 73-5] at ¶ 3, "Year of Creation: 1995; Certificate of Registration, ¶ 4, "If work has been published, Date and Nation of Publication: **(a). Date April ? 2005**; (b) Nation United States of America." (emphasis added).) The clear inference is that Mr. Fair was attempting to copyright his "Royal Entrance" in 2006 solely because he had published his work to Sportsman's Warehouse in the portfolio in 2005. Mr. Fair has since vacillated about when "Royal Entrance" was first displayed or published. In his March 2, 2007 email to stephencleblanc@earthlink.com, he states that his "sculpture 'Royal Entrance,' [is] a sculpture that first came under copyright protection in 1996 by publication, Copyright VA 1-382-611." Regardless of the dates Mr. Fair referenced in his 2006 application for copyright or his 2007[3] email, and excluding the question

<hr />

[3] As of late, Mr. Fair has begun referring to his **1994** sculpture. (*See i.e*., Fair's Objection to Plaintiff Sportsman's Warehouse, Inc.s' Reply in Support of Summary Judgement under F.R.C.P. Rule 11" (hereinafter "Fair Obj. to Reply" [Doc. No. 319]). There is no indication other than Mr. Fair's opportunistic recreation of history that "Royal Entrance" was created earlier than 1995, his claimed date of creation or published prior to 1997, when a depiction of Fair's sculpture appears in 1997 Wild Wings catalogue together with a receipt

of whether the Roden sculpture was actually the maquette for "I'm the Boss," the remainder of the undisputed facts indicate that creation of a small sculpture which looked very much like "I'm the Boss,"  preceded or nearly coincided with "Royal Entrance's" first publication, and that "I'm the Boss," with purchasers and gallery showings in 1995 was created by Stephen C. LeBlanc either before, or nearly simultaneously with Steven Fair's "Royal Entrance."

### D.    Copyright Extends to Only Original Expression

Any copyrighted expression must be "original."  *Feist Pubs., Inc.*, 499 U.S. at 345. Although the amount of creative input by the author required to meet the originality standard is low, it is not negligible.  *Id.* at 362.  There must be something more than a "merely trivial" variation, something recognizably the artist's own.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 489 (9th Cir. 2000).  The originality requirement mandates that objective facts and ideas are not copyrightable.  *Baker v. Selden*, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879); *Feist*, 499 U.S. at 347; *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109-10 (9th Cir. 1970). Similarly, expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.  *Bridge Publications, Inc.,* 183 F.R.D. at 259; *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  In a 1924 case from the District of New York, *Fred Fisher, Inc. v. Dillingham, D.C.*, 298 F. 145, 151 (D.C.N.Y. 1924), the court illustrates the point as, "...the court speaks of two men, each a perfectionist, independently making maps of the same territory. Though the maps are identical each may obtain the exclusive right to make copies

---

apparently bearing the date 1997 as the date "painted."  (Fair's Rsp. S.W. Sum. J., Exh. A-12, p. 22-25.)

of his own particular map, and yet neither will infringe the other's copyright."  *See also Mazer*,

347 U.S. at 217-218.  Given the publication dates of "Royal Entrance" as set forth by Mr. Fair,

he cannot meet the "originality test" under any set of circumstances when comparing his work to

LeBlanc's "I'm the Boss."

1.      **Filtering Test to Determine Infringement of Protectable Elements**

The Tenth Circuit has utilized an "abstraction-filtration-comparison" test for determining

if an accused work is substantially similar to the protectable elements of a copyrighted work:

> At the abstraction step, we separate the ideas (and basic utilitarian functions),
> which are not protectable, from the particular expression of the work.  Then, we
> filter out the nonprotectable components of the product from the original
> expression.  Finally, we compare the remaining protected elements to the
> allegedly copied work to determine if the two works are substantially similar.

*Country Kids*, 77 F.3d at 1284-85.

Using this test, the court first must separate the ideas which are not protectable from the

particular expression of the work.  *Id.* at 1285.  Then, the court must filter out the unprotected

components of the product from the original expression.  *Id.*  Finally, the court compares the

remaining protected elements to the allegedly copied work to determine whether the two works

are substantially similar.  *Id.*

Since copyrights do not protect thematic concepts, the fact that the same subject matter

may be present in artistic renderings does not prove copying or infringement.  Indeed, an artist is

free to consult the same source for another original creation.  As Justice Holmes stated:  "Others

are free to copy the original. They are not free to copy the copy." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 249 (1903).

"[E]lements of a copyright defendant's work that were created prior to access to a plaintiff's work are to be filtered out at the first stage of substantial-similarity analysis, just as non-protectable elements are." *Id.* Therefore, when applying the filtering tests, independently-created elements such as those found in LeBlanc's earlier sculptures must also be filtered out. Ordinarily, similar elements between known work of the two sculptors would, depending on the degree of uniqueness and originality of the element, be evidentiary. However, where LeBlanc, the accused infringer, owns prior works containing the same elements, LeBlanc would have no reason, "beyond the illicit thrill of copyright infringement," to copy wrongfully from another what he could legally copy from himself. *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 325-326 (6th Cir. 2004). Therefore, where an element occurs both in a defendant's prior work and a plaintiff's copyrighted work, no inference of copying can be drawn. *Id.; see Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir.1936) ("If the defendant has had access to other material which would have served him as well, his disclaimer [of copying] becomes more plausible.") In this case, then, almost all the individual elements over which Mr. Fair claims copyright protection would be removed as having occurred in Mr. LeBlanc's prior creations of "Looking for Trouble," "I'm the Boss" and the Roden sculpture, leaving no protectable elements upon which any jury could find substantial similarity.

## 2.    Protectable Original Elements

Further, a court may find non-infringement as a matter of law where the similarity between the works concerns only non-copyrightable elements of the plaintiff's work. *Warner Bros. Inc. v. American Broadcasting Companies*, 720 F.2d 231, 240 (2d Cir. 1983). "One of the fundamentals of copyright law is that a copyright does not protect an idea, but only the expression of the idea." *Autoskill, Inc. v. National Educ. Support Sys.*, 994 F.2d 1476, 1491 (10th Cir. 1993). The Copyright Act provides "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (1996).

Courts routinely hold that, while realistic depictions of live animals may be protected by copyright, the protection afforded is "thin" and extends only to those original expressions that are not dictated by nature. *Satava v. Lowry*, 323 F.3d 805, 810-13 (9th Cir. 2003). As the *Satava* court noted:

> Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them. An artist may, however, protect the original expression he or she contributes to these ideas. An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of the animal. An artist may vary the background, lighting, or perspective. Such variations, if original, may earn copyright protection.

*Id.* at 812-13. *See also George S. Chen Corp. v. Cadona Int'l, Inc.*, 266 Fed. Appx. 523, 2008 WL 152651 (9th Cir. 2008) (finding unprotectable those elements of a work that are commonplace or dictated by the idea of the animal in nature); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from such dolls."); *Dyer v. Napier*, 2006 WL 2730747 (D. Ariz. 2006) (involving depictions of a mother mountain lion with her cub). Moreover, such "thin" copyright protects the creator of the asserted work against "only virtually identical copying." *Satava*, 323 F.3d at 821; *Dyer*, 2006 WL 2730747, 8. Steven Fair does not dispute that his copyright protection is, at best, "thin." (Fair Rsp. S.W. Sum. J. at 15, ¶¶48, 50.)

Even given the applicability of "thin" copyright protection for wildlife renditions, courts routinely find that depictions of animals are unprotectable because the expression of the animal in nature has merged with the idea of the animal. *See, e.g., Franklin Mint Corp. v. Nat'l Wildlife Art Exchange, Inc.*, 575 F.2d 62, 66 (3d Cir. 1978) (upholding the district court's determination that similarity between paintings of cardinals "reflected the common theme or subject"); *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir. 1971) (finding merger of the idea and expression of a jeweled pin depicting a bee; similarity between the two pins was no greater "than is inevitable from the use of jewel-encrusted bee forms in both."); *Streeter v. Rolfe*, 491 F. Supp. 416 (D.C. La. 1980) (plaintiff's copyright merely protects his expression of the idea of turkey decoys). When the 'idea' and its 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would

confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by law. *Baker*, 101 U.S. at 103.

Mr. Fair stated under oath that in "Royal Entrance" he had not created a work that depicts anything that does not appear in nature based on his knowledge, understanding, and experience. (Deposition of Steven G. Fair, February 29, 2008, [hereinafter "Fair Depo."] at 69.) However, Fair claims that LeBlanc's sculptures infringe the pose, attitude, and expression of "Royal Entrance." (Fair Depo. at 63.) Fair also claims that "Royal Entrance" depicts the idea of a mature bull elk in "flehmen," a term that describes a male elk's lip position to facilitate detection of the scent of a female elk. (Fair Depo. at 47-48.) LeBlanc's sculptures "I'm the Boss" and "The Challenger" also depict the idea of a bull elk in flehmen "scenting" a cow elk. (LeBlanc Mot. S.J. at 6.) The expression of "Royal Entrance" is dictated by the idea of a bull exhibiting the flehmen response. (Fair Depo. at 105.)

By Fair's admission, all of the purported expressions contained in "Royal Entrance" are scènes à faire[4] that flow from the uncopyrightable concept of an elk exhibiting the flehmen response. Fair states, "the nose, the lips, the tongue, the ivory, the nostril, the glands, the eyes, the pedicel, the antlers, the neck, the back, the shoulder, the elbow, the leg, the hoof, the ribs, the hide, the loin, the hind, the rump, the tail, the hock, the leg, the hoof, the testicles, the penis,

---

[4] The scènes à faire doctrine, like the doctrine of merger, stems from a situation where there is essentially one single way to express an idea. This encompasses details which necessarily stem from a particular "genre" or "scenes which 'must' be done." *Atari, Inc. North American Philips Consumer Elec. Corp.* 672 F.2d 607, 616 (7th Cir. 1982).

[and] the hair are not individually copyrightable under *scenes a fair*." (Fair Rsp. S.W. Sum. J., Affidavit 287-2, p. 13.) (italics in orig.) Later Mr. Fair states, "Fair claims no copyright on 7/8 year old antlers, elk noses, elk flehmen, elk ears, elk nostrils, elk muscles, elk hooves, elk legs, elk eyes, elk ivory, elk lips, elk hide, elk tails, elk hair, bull elk, cow elk, calf elk, or any other thing created by Nature." (*Id*. at 29.)

Mr. Fair describes the display of the flehmen response in "Royal Entrance" as depicted by the elk "...moving warily downhill. His dorsal line, the back, the axis, the spine is slightly curved, his neck is curved. His head is rolled back so that his olfactory glands, his raised lip is up, as he would be scenting the estrus cow." (Fair Depo. at 51-2.) Mr. Fair testified that he was attempting to convey the concept of a bull elk exhibiting the flehmen response. (Fair Depo. at 47-8.) Mr. Fair acknowledges that "[f]lehmen is not copyrightable." (Fair Depo. at 111 and several of his many pleadings.)

The features that comprise Mr. Fair's expression in "Royal Entrance" are all characteristic of the idea of an elk in flehmen in nature. (Fair Depo. at 49.) The sculptural elements described by Mr. Fair are not original to "Royal Entrance" because each and every one of them is dictated by the behavior of an elk exhibiting the flehmen response. (Fair Depo. at 52.) When challenged with aspects of his sculpture that appear in and are dictated by nature, Mr. Fair replied "scènes à faire." (Fair Depo. at 121.) Mr. Fair admits that in "Royal Entrance" he has not created a work that depicts anything that does not appear in nature based on his knowledge, understanding, and experience. (Fair Depo. at 69.)

It is true, of course, that a unique combination of unprotectable elements may qualify for copyright protection. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994); *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement."). *See also Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.").

Fair does not dispute that elk in nature can be seen in thousands of different poses including, "feeding, bedded, walking, standing, running, galloping, trotting, drinking, scraping, wallowing, sleeping, nursing, bulging, flehmen, barking, chirping, clicking, fighting, resting, watering, antler rubbing, scratching, kicking, in snow, in winter, in summer, in spring, in fall, or aggressively displaying bull/bull 'bugle', in sexual display, antler displaying, playing, escaping, or etc. & etc. etc.". (Fair Rsp. S.W. Sum. J. at 14.) A combination of unprotectable elements as set forth by Fair, is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship. *Satava*, 323 F.3d at 811; *Metcalf*, 294 F.3d at 1074; *Apple Computer, Inc.*, 35 F.3d at 1446; *Feist*, 499 U.S. at 358 ("[T]he principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection.").

Infringement may not be found unless Mr. LeBlanc "copied protectable elements" of the copyrighted material and "those protectable elements comprise a substantial part" of Mr. Fair's work. "Royal Entrance" is merely a compilation of scènes à faire, to which copyright protection cannot extend. *See Satava v. Lowry*, 323 F.3d at 810 (applying scènes à faire doctrine and holding that elements of expression "that naturally flow from the idea" of the animal sculpture, as well as aspects resulting from the animal's physiology, are not protectable.)

The huge variety of elements set forth in detail in LeBlanc's Motion for Summary Judgment, at 5-16, and in Fair's Response to Sportsman's Warehouse Motion for Summary Judgment are elements so commonplace in any life-like sculpture of an elk and so typical of elk physiology that to recognize copyright protection in their combination effectively would give Mr. Fair a monopoly on any elk sculpture, especially during the mating season which occurs every fall. *Satava* at 811(elements of lifelike glass-in-glass sculptures of single jellyfish with vertical tentacles could not be copyrighted); *Feist*, 499 U.S. at 363 (noting that the selection, coordination, and arrangement of phone numbers in a directory "is not only unoriginal, it is practically inevitable"). The quantum of originality Fair added in combining these standard and stereotyped elements, if any, can only be considered "trivial."

Mr. Fair seems to confuse objective attributes of a wildlife sculpture which could be subject to copyright protection, with the fact that he did not use any reference materials to create the elk depicted in "Royal Entrance." Because the entire sculpture sprang from his own mind, Mr. Fair claims the material had to be his "original" idea. This is simply not the test. "Royal Entrance" is a depiction of an elk, a creature of nature, which Mr. Fair was visualizing based

upon his study of and familiarity with elk he had seen previous to the creation of "Royal Entrance."   Mr. Fair did not "create" elk simply because he saw one in his head and reproduced it in a sculpture; he had seen elk previously or would not have had the vision to associate with the word "elk" in the first place.   Whether he used pictures or a live elk 'model' to help him create a life-like bronze version of an elk is completely irrelevant to whether there are protectable elements in Mr. Fair's version of an elk which are unique from the elk itself in nature.   In this case, both Mr. Fair and Mr. LeBlanc were attempting to create a realistic and lifelike representation of an elk.  (Fair Depo. at 102-103; LeBlanc Decl. ¶13.)  Fair cannot prevent other artists from combining elk physical attributes, whether or not he conjured them from an image in his head or whether he saw them in pictures or real life.  Congress did not intend for artists to fence off private preserves from within the public domain, and, if Mr. Fair's copyright was recognized, it would permit him to do exactly that.

Mr. Fair also asserts that because he personally has never seen a live elk in exactly the same pose that he created for "Royal Entrance," the work is his original "artistic expression" and therefore copyright protectable.  (Fair Rsp. S.W. Sum. J. at 14, ¶48; Fair Rsp. S.W. Sum J. Affidavit 287-2 ¶ 14 ["pose/attitude [of Royal Entrance] that has never been observed by the Author in Nature"].)  Fair repeatedly makes the argument, "Fair has never seen the pose, attitude, gesture, coat, or texture in Nature as artistically expressed in the whole of Fair's 1994 'Royal Entrance'."  (Fair Rsp. S.W. Sum. J., Affidavit Doc. 287-2 at p. 10, ¶9.)  This is simply another spin on the argument that Fair created his sculpture "out of his head" and without reference to pictures or even to living elk in the wild.  Whether Fair has ever seen an elk in the

pose of "Royal Entrance" is not the point. Clearly, an elk had been posed and even sculpted in a similar pose as it is depicted in the elk sculpture purchased by Roden from LeBlanc in early 1994. As is clear from the pose of the elk in the Roden sculpture, the pose was naturally possible and had been recreated <u>before</u> Fair created "Royal Entrance" in his mind. The fact that Fair believes he created something totally original and unique is not the point of copyright protection. The protectable item has to actually be original and unique and not seen in nature.

Therefore, the court finds that there are no quantifiable protectable elements in Mr. Fair's sculpture of "Royal Entrance" which could be the beneficiary of a copyright individually or collectively. Together the elements which are non-protectable do not arise to any pose or expression which is not found in nature and therefore collectively are non-copyrightable. Finally, as discussed below, to the extent any copyright protection could be found on the ethereal "feeling" of the sculpture, there is no evidence of copying which would support a claim of infringement.

### 3.      Direct Copying

In a transparent effort to hang his hat on *Apple Computer v. Franklin Computer Corp.*, 714 F.2d 1240, 1245 (3d Cir. 1983) and other cases involving original "errors" which were copied in later works (generally cases involving software programming or directory listings), Fair repeatedly states that in his work "Royal Entrance," he introduced the idea of flehmen as a "mistake." ( Fair Rsp. to S.W. Sum. J. at 6.) The court is unsure exactly what is meant by this, except perhaps that Mr. Fair did not intend to depict his elk sculpture in flehmen, but rather as a bugling male, a related but slightly different looking elk behavior. Fair alleges, "LeBlanc

presents facts that he does not know the difference between bugle and flehmen, and LeBlanc mistakenly copied Fair's mistake. Whether or not Fair's flehmen was a mistake, the flehmen mistake tripped up Stephen C. LeBlanc. . .". (Fair Obj. to Reply at ¶ 6.) Fair states, "Flehmen is a single aspect of Fair's 'Royal Entrance' *scenes a faire*, and the sculpture could be artistically expressed as bulging with only modification of the nose/mouth." (Fair Rsp. S.W. Sum. J., Affidavit, Doc. No. 287-2, ¶ 31) (italics in original.) He insists that Mr. LeBlanc then incorporated the same "mistake" when he later described his elk sculptures as "bugling." (*Id.*)

Whether Mr. LeBlanc or Mr. Fair actually knew the difference between elk in flehmen response and elk bugling is irrelevant. Both behaviors are engaged in by elk in nature. Whether an artist, be it sculptor, photographer, or painter, knows the underlying physiological basis for what he or she is faithfully reproducing from animal behaviors, if what they reproduce is an accurate representation of poses, attributes or other effects engaged in by the animal in the wild, it is not a protectable element and is fairly characterized as scènes à faire. In fact, Mr. Fair does not proclaim to impose his copyright on the act on an elk in flehmen, whether or not his inclusion of it in "Royal Entrance" was a mistake.

There is no evidence of direct copying of "Royal Entrance" by LeBlanc. (LeBlanc Declar. ¶ 9) LeBlanc's "I'm the Boss" was not produced from the same mold as "Royal Entrance." (Fair Depo at 126.) In fact, Fair admits that "Royal Entrance", "I'm the Boss" and "The Challenger" differ in several identifiable ways. (Fair Rsp. S.W. Sum. J. at 7.) Fair admits that LeBlanc's sculptures are "opposite" of Fair's - something Fair refers to as a "Mirror Image." (Fair Rsp. S.W. Sum. J. at 32.) Fair also admits the antlers on the elk are different, there is

different veining in the face and the foot and legs are different. (*Id.*) All those differences, Fair

dismisses as scènes à faire. Those differences, along with the other undisputed evidence,

indicate that there was no direct copying of "Royal Entrance" by Mr. LeBlanc.

### 4.       Indirect Proof of Copying

Absent direct proof of actual copying, Fair must prove copying indirectly by establishing

that LeBlanc had access to the copyrighted work and that probative similarities of protectable

elements exist between the copyrighted material and the allegedly copied material. *Id.* The

"copying" proscribed by copyright law in this context, then, means more than tracing the

original, line by line. To some extent it includes the appropriation of the artist's thought in

creating his own form of expression. *Franklin Mint Corp.,* 575 F.2d at 64-65.

Mr. Fair fails to allege or establish that Mr. LeBlanc had access to Fair's  work prior to

the 1997 edition of the Wild Wings catalogue, a time period  well after LeBlanc had created and

sold several editions of the maquette of "I'm the Boss," as well as the similar looking Roden

sculpture. LeBlanc undisputedly began work on "pointing up" the smaller "I'm the Boss"

displayed at Cogswell Galleries since 1995 for the Vail Associates monumental version in 1997.

Given the absence of direct evidence of copying, access by LeBlanc to Fair's "Royal Entrance"

is an element which Fair must, but has not and apparently cannot, establish. *Country Kids*, 77

F.3d at 1284.

To determine substantial similarity, the Tenth Circuit has stated that the "ordinary

observer" test is an appropriate method. *Country Kids*, at 1288. The court must consider

"whether the accused work is so similar to the plaintiff's work that an ordinary reasonable

person would conclude that the defendant unlawfully appropriated plaintiff's <u>protectable</u> expression by taking material of substance and value." *Id.* (quoting *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) (overruled on other grounds).

Although the issue of substantial similarity may be an issue of fact for resolution by a jury, a court may sometimes determine non-infringement as a matter of law where (1) the similarity between the two works concerns <u>only non-copyrightable elements</u> of the plaintiff's work, as I find in this case, or (2) no reasonable jury could find that the two works are substantially similar. *Warner Bros. Inc.*, 720 F.2d at 240.

Although the key to the ordinary observer test is substantial similarities, not differences, courts have acknowledged that "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to the plaintiff's." *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp.2d 1213, 1226 (D. Colo. 1999). *See also Warner Bros.*, 720 F.2d at 241 (noting that numerous differences between works tend to undercut substantial similarity). Furthermore, "where the protected work and accused work express the same idea, similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Durham Indus., Inc.,* 630 F.2d at 913.

### E. Conclusion

Both Mr. Fair's version of an elk expressed by "Royal Entrance" and Mr. LeBlanc's versions of elk expressed by "I'm the Boss" and "The Challenger" are visually distinguishable from live elk only by size and because the sculptures are of bronze while the other is flesh and

blood. Mr. Fair's arrangement of the attributes of an elk is not "original" for copyright purposes. Instead, his arrangement remains that of an elk, walking downhill on rocks, scenting for a female during mating season, an idea which has been in the public domain for years. There are simply no protectable elements to distinguish Fair's elk sculpture as outside the public domain. Despite the artistic appeal of "Royal Entrance", "I'm the Boss" and "The Challenger", whatever ineffable qualities they each possess stem from "trivial" variation from the vision of a live elk, not "substantial" variation as contemplated in *Durham*. *Todd v. Montana Silversmiths, Inc.*, 379 F. Supp.2d 1110, 1111-1112 (D. Colo. 2005). Therefore, this Court recommends the District Court find that there has been no infringement of Steven G. Fair's sculpture, "Royal Entrance" by Stephen C. LeBlanc in his creations "I'm the Boss" and "The Challenger" and award summary judgment in favor of Stephen LeBlanc on his Second Cross Claim of Declaratory Judgment of Non-Infringement.

Since there has been no infringement by Stephen C. LeBlanc of Steven G. Fair's copyright, there can be no infringement by Sportsman's Warehouse, a purchaser of LeBlanc's sculptures "I'm the Boss" and "The Challenger" and therefore I recommend granting Summary Judgment of Non-Infringement to Sportsman's Warehouse.

IV.     **Analysis of Motions to Dismiss for Failure to State a Claim**

Mr. Fair's Motions to Dismiss concerning the non-infringement claims by Sportsman's Warehouse and Stephen C. LeBlanc are resolved by the above analysis. Remaining for decision is Mr. Fair's motion to dismiss Mr. LeBlanc's claim of defamation pursuant to Fed. R. Civ. P. 12(b)(6).

To state a cause of action for defamation under Colorado law, the plaintiff must allege "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1183 (10th Cir. 2007) (quoting *Williams v. Dist. Ct., Second Judicial Dist.*, 866 P.2d 908, 911 n. 4 (D. Colo. 1993). LeBlanc's Cross Claim for Defamation against Fair alleges that Sportsman's Warehouse is a purchaser for value of animal sculptures from Steven LeBlanc, including the sculpture "I'm the Boss." (Ans./Cross-Claim, p. 5 ¶¶ 9 and 10.) The Cross Claim states, "Fair has falsely asserted to Sportsman's that "I'm the Boss" is an unauthorized copy of Fair's sculpture title "Royal Entrance" which is allegedly copyrighted." (*Id*. at ¶ 12.) Further the Cross Claim states, "Fair threatened to file a complaint against Sportsman's and LeBlanc in March of 2007 and again on June 12, 2007." (*Id*. at 13.) LeBlanc has asserted that the statements are "false" and that the statements have or will cause LeBlanc damages. (*Id*. at ¶¶ 16 and 18.)

This court, as it must, considers all the factual allegations in LeBlanc's complaint as true for purposes of considering Mr. Fair's Motions to Dismiss and has construed all those allegations in the light most favorable to Mr. LeBlanc and has made all reasonable inferences in LeBlanc's favor. *See Alvarado*, 493 F.3d at 1210; *Timpanogos Tribe,* 286 F.3d at 1204. I find that LeBlanc's Cross Claim for Defamation against Mr. Fair includes enough facts to state a claim for relief that is plausible on its face and therefore I recommend Mr. Fair's Motion to Dismiss LeBlanc's First Cross Claim of Defamation be denied.

**IT IS HEREBY RECOMMENDED::**

1.     "Defendant and Cross-Claimant Stephen C. LeBlanc's Motion for Summary Judgment" [Doc. No.73] be GRANTED;

2.     "Plaintiff Sportsman's Warehouse, Inc.'s Motion for Summary Judgment" [Doc. No. 271] be GRANTED;

3.     "Defendant and Cross-claimant Stephen C. LeBlanc's Motion for Order Setting Oral Argument on Motion for Summary Judgment" [Doc. No. 151] be DENIED as MOOT;

4.     Steven G. Fair's "Expedited Motion to Dismiss under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted" [Doc. No. 158] and "First Amended Expedited Motion to Dismiss under FRCP 12(b) for Want of Jurisdiction and for Failure to State a Claim upon Which Relief May be Granted" [Doc. No. 231] be DENIED;

5.     "Defendant and Cross-Defendant Steven George Fair's Motion to Dismiss Cross-Claimant LeBlanc's Complaint of Defamation for Failure to State a Claim Upon Which Relief May be Granted Pursuant to FRCP Rule 12(b)(6)" [Doc. No. 289] be DENIED.

6.     "Defendant/Cross Defendant Fair's Motion for Declaratory Judgment of Infringement" [Doc. No. 224] be DENIED; and

7.     "Defendant and Cross-claimant Stephen C. LeBlanc's Motion to Strike Defendant/Cross Defendant Fair's Motion For Declaratory Judgment of Infringement" [Doc. No. 227] be DENIED.

**THIS COURT FURTHER RECOMMENDS:**

1.      Steven G. Fair's "Petition for Protective Order and Order to Compel Stuart Utgaard to Answer Fair's Interrogatories and Admissions" [Doc. No. 166, filed February 1, 2008] be DENIED as MOOT;

2.      "Defendant/Crossdefendant Fair's Objection and Motion Under FRCP 37 to Compel Answers" [Doc. No. 189, filed February 11, 2008] be DENIED as MOOT;

3       "Fair's First Amended Expert Witness Disclosure and Motion for Subpoenas" [Doc. No. 167, filed February 1, 2008] be DENIED as to the request for subpoenas.  The infringement issues have been resolved with respect to the sculptures identified and for which the subpoenas were requested; and

4       "Defendant and Cross-Claimant Stephen C. LeBlanc's Motion to Quash Subpoenas" [Doc. No. 201, filed February 14, 2008] be GRANTED.


**NOTICE:  Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United***

*States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *Int'l Surplus Lines Ins, Co. v. Wyo. Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see,*

*Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of June, 2008.

BY THE COURT:

s/ Kathleen M. Tafoya
KATHLEEN M. TAFOYA
United States Magistrate Judge