IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 07-cv-01271-WDM-KMT

SPORTSMANS WAREHOUSE, INC.,

    Plaintiff,

v.

STEVEN G. FAIR and
STEPHEN C. LEBLANC,

    Defendants,

and

STEPHEN C. LEBLANC

    Cross Claimant

v.

STEVEN G. FAIR

    Cross Defendant.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

Miller, J.

This case is before me on the recommendation (doc no 338) of Magistrate Judge Kathleen M. Tafoya regarding numerous outstanding motions (docs no 73, 151, 158, 166, 167, 189, 201, 224, 227, 231, 271, 289). Magistrate Judge Tafoya recommends that summary judgment be entered declaring that certain sculptures by Defendant and Cross Claimant Stephen C. LeBlanc ("LeBlanc") do not infringe on the copyrighted sculpture of Defendant and Cross Defendant Steven G. Fair ("Fair"). This would dispose of most of the

outstanding motions on the merits or render them moot. Magistrate Judge Tafoya also recommends denying Fair's motion to dismiss LeBlanc's cross claim against Fair for defamation. Fair filed timely objections[1] to the recommendation and therefore is entitled to *de novo* review. 28 U.S.C. § 636(b). For the reasons that follow, I will accept Magistrate Judge Tafoya's recommendation as modified.

## Background

Fair claims that LeBlanc's bronze monumental elk sculptures, entitled "I'm the Boss" and "The Challenger," infringe on Fair's copyrighted bronze sculpture entitled "Royal Entrance." Although the background of the dispute is set forth in detail in the recommendation, I will recite it again here to address the points particularly relevant to Fair's objections and the infringement analysis.

LeBlanc and Fair are both artists and sculptors. Fair created a sculpture of an elk, initially in clay and then later cast in bronze, entitled "Royal Entrance." According to Fair, he began "Royal Entrance" in late 1994 and displayed it in clay form at art shows starting January 1995. The mold of "Royal Entrance" was made in April 2005 and bronze versions of the sculpture were sold thereafter. "Royal Entrance" is a realistic "maquette," that is, a small sculpture prepared for the possible purpose of creating a monumental or larger-than-life size work, and is finished in a colored patina. "Royal Entrance" depicts a male elk with large antlers walking downhill, with the hoof of a front leg raised. The head is turned and

---

[1] Indeed, Fair filed four separate documents (doc nos 346, 347, 348, and 349), amounting to over 130 pages, containing his objections, most of which are repetitious and/or unintelligible. These and nearly all other filings by Fair have clearly violated this Court's local rule requiring that such documents be "concise." D.C.COLO.LCivR. 7.1(H). Nonetheless, I will accept these documents and address Fair's objections to the extent they can be discerned.

2

slightly low and the nose is somewhat raised. Fair contends that the sculpture shows a bull elk during mating season in "flehmen," a behavior of many ungulates, including elk, involving the curling of the upper lip to assist in the scenting of females. Plaintiff registered "Royal Entrance" with the United States Copyright Office, Registration No. VA-1-382-611, on or around October 2, 2006. On the registration, he initially identified the first "publication" of the sculpture as 2005 but thereafter filed a correction, asserting that "Royal Entrance" was first published in 1995.

LeBlanc is also a sculptor of realistic wildlife art. He created a life-size or monumental elk sculpture entitled "Looking for Trouble" in 1986. LeBlanc provides a photograph of the large version of "Looking for Trouble" in Exhibit A-9 of his Motion for Summary Judgment (doc no 73-11). The elk depicted in that sculpture also appears to be walking, but its head is raised and the mouth appears to be closed, although the photograph is dark and somewhat difficult to discern.[2] Thereafter, LeBlanc began working on another elk sculpture. LeBlanc created a maquette in 1993 and first displayed it in 1994. LeBlanc presents as evidence an affidavit from a client, Donald Roden, who affirms that he saw the maquette in February 1994 and purchased it shortly thereafter; photographs of the elk sculpture owned by Roden are also provided. Exh. A-12 to LeBlanc Motion for S.J. (doc no 73-14). This maquette, which Magistrate Judge Tafoya refers to as the "Roden sculpture" is the source of many of Fair's objections and so I will address the factual issues he raises.

According to LeBlanc, the maquette purchased by Roden was called "I'm the Boss"

---

[2]Fair does not assert that "Looking for Trouble" infringes on his copyright.

3

and was the model for the monumental sculpture that Fair contends infringes on "Royal Entrance." LeBlanc also provides another photograph of what he claims is the "I'm the Boss" maquette, which indeed appears to be identical to the Roden sculpture. Exh. A-6 to LeBlanc Motion for S.J. (doc no 73-8). Fair disputes that the Roden maquette is the basis of the monumental "I'm the Boss." As grounds, he provides photographs from the website of Angler Art, a gallery that apparently carries LeBlanc's sculptures. The Angler Art website has a photograph of an elk sculpture maquette identical to the Roden sculpture and the purported "I'm the Boss" maquette, but on the website it is entitled "Looking for Trouble." Accordingly, Fair argues that the Roden maquette is actually the model for the monumental "Looking for Trouble" sculpture, not "I'm the Boss," and that LeBlanc's first rendering of "I'm the Boss" does not precede Fair's creation of Royal Entrance. In a footnote, LeBlanc asserts that the Angler Art website, which he apparently does not control, contains errors. LeBlanc Reply (doc no 124) at 4, n. 3. Magistrate Judge Tafoya concluded, *inter alia*, that even if the Roden sculpture was not the model for the monumental "I'm the Boss," it was undisputedly made before Fair created his first clay version of "Royal Entrance;" therefore, LeBlanc could not have copied its elements from Fair.

I agree with Magistrate Judge Tafoya that the dispute about the title of the Roden sculpture is immaterial. Regardless of whether the Roden maquette is the maquette of "I'm the Boss" or of "Looking for Trouble," it was unquestionably created before Fair sculpted "Royal Entrance." Moreover, it contains the features of the monumental version of "I'm the Boss" that Fair claims were copied from "Royal Entrance," including the depiction of a male elk with large antlers, walking downhill, with one front hoof raised to show walking, with a

4

slightly turned lowered head and raised nose, and with the mouth open, lips back and teeth showing; LeBlanc's large and small sculptures are essentially the same. Since LeBlanc undisputedly created a sculpture, regardless of its title, of a male elk in the same pose, attitude, etc., as the monumental sculpture "I'm the Boss" before Fair, he cannot have copied these elements from Fair.[3]

Monumental versions of "I'm the Boss" were sold and installed in a variety of locations beginning no later than 1998, including one installed at a Sportsman's Warehouse sporting goods store in Portland, Oregon. Sportsman's Warehouse has purchased numerous bronze sculptures from LeBlanc for its stores since 2001. The sculpture at the Portland store has been on display since approximately July 25, 2005. Fair approached Sportsman's Warehouse in late 2004 or 2005, offering to make sculptures for purchase by the store and sending photographs of his work. Sportsman's Warehouse declined to buy Fair's artwork. Fair thereafter apparently saw the sculpture of "I'm the Boss" at the Portland Sportsman's Warehouse and began corresponding with LeBlanc and Sportsman's Warehouse, alleging that LeBlanc had made an unauthorized copy of "Royal Entrance" and violated Fair's copyright. LeBlanc has never filed copyright registrations of "Looking for Trouble," "I'm the Boss," or "The Challenger."

Plaintiff Sportsman's Warehouse filed a complaint in this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that "I'm the Boss" does not infringe on Fair's copyright-protected original work and that Sportsman's Warehouse cannot be

---

[3]Moreover, I agree with Magistrate Judge Tafoya that the maquette looks distinctly different from the monumental elk sculpture shown in LeBlanc's Exhibit A-9 (doc no 73-11), which is indisputably titled "Looking for Trouble."

liable as a vicarious or contributory infringer. Sportsman's Warehouse named both LeBlanc and Fair as defendants. LeBlanc also asserted cross claims against Fair for defamation and for a declaration of non-infringement.

## Discussion

### 1. Copyright Infringement Principles

To succeed on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) that the defendant copied constituent elements of the work that are original to the plaintiff (i.e., elements protectable by copyright). *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008). A Copyright Office Certificate of Registration obtained within five years of first publication constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). It is undisputed that Fair's copyright registration was obtained more than five years after the first publication of "Royal Entrance" and therefore there is no presumption of validity of the copyright. Even where a copyright is presumed valid, however, a defendant may overcome the presumption "by presenting evidence and legal argument sufficient to establish that the works in question were not entitled to copyright protection." *Meshwerks*, 528 F.3d at 1262. Copyright protection extends only to "original works of authorship." 17 U.S.C. § 102 (a).

The operative distinction in determining originality is between "ideas or facts in the world" on the one hand, which cannot be copyrighted, and "a particular expression of that idea or fact, that can be." *Meshwerks*, 528 F.3d at 1264 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991)). An accurate portrayal of something that exists in the world (i.e., facts and ideas, such as a particular bottle) cannot be copyrighted but

6

original expressions of those facts and ideas receive "thin" copyright protection, perhaps only from exact duplication by others. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). In the context of realistic wildlife sculpture, one court has noted that a purported copyright holder "may not prevent others from copying aspects of his sculptures resulting from either [the animal's] physiology or from [the animal's] depiction in the [particular artistic] medium." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). "Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters." *Id.* at 813. However, a combination of unprotectable elements may qualify for protection if those elements "are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Id.* at 811. In addition, an artist may vary "the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal" or vary "the background, lighting, or perspective" to create original elements. *Id.* at 813.

For the second part of the infringement claim (copying), a plaintiff can indirectly prove copying by demonstrating that the defendant had access to the plaintiff's copyrighted work and that there are probative similarities between the between the copyrighted material and the allegedly copied material. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996). To determine whether the allegedly infringing product is substantially similar to the protectable elements of the plaintiff's work, the Tenth Circuit instructs me to apply the "abstraction-filtration-comparison test." *Id.* This requires separating the ideas from the particular expression of the work. *Id.* at 1285. Then, I filter

7

out the non-protectable components of the product from the original expression and compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar. *Id*. Elements of a copyright defendant's work that were created prior to access to a plaintiff's work are also filtered out before the defendant's work is compared to the plaintiff's. *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 326 (6th Cir. 2004).

2. The Recommendation

Magistrate Judge Tafoya concludes that the Roden maquette, sold in early 1994, looks almost identical to the monumental version of "I'm the Boss."[4] This small sculpture preceded or coincided with the first publication of "Royal Entrance." Moreover, applying the "abstraction-filtration-comparison" test, Magistrate Judge Tafoya concluded that almost all the individual elements over which Fair claims copyright protection have to be removed because they occurred in LeBlanc's prior works or are unprotectable because they derive from nature, i.e., from the non-protectable idea of a bull elk in flehmen. "The sculptural elements described by Mr. Fair are not original to 'Royal Entrance' because each and every one of them is dictated by the behavior of an elk exhibiting the flehmen response." Recommendation at 19. The only element possibly original to "Royal Entrance" is the pose of the elk in the sculpture; however, as noted by Magistrate Judge Tafoya, "the pose was naturally possible and had been recreated before Fair created 'Royal Entrance' in his mind." *Id.* at 23.

---

[4]LeBlanc offers as evidence letters from other collectors who allegedly purchased maquettes of "I'm the Boss." However, the statements do not include photographs; given the dispute over the title of the maquette purchased by Roden, I will not consider this evidence.

8

In addition to the lack of protectable elements, Magistrate Judge Tafoya determined that there is no direct or indirect evidence of copying by LeBlanc. The sculptures were not produced from the same mold and differ in a number of respects, including antlers, veining, and leg position. I note that the size and finish of LeBlanc's and Fair's sculptures are different as well. Moreover, Magistrate Judge Tafoya observes that Fair did not offer evidence showing that LeBlanc had access to Fair's work before LeBlanc created the Roden maquette and that any similarities between the work are of solely non-copyrightable elements. Accordingly, Magistrate Judge Tafoya recommends granting summary judgment of non-infringement in favor of LeBlanc and Sportsman's Warehouse. I agree with this analysis and will grant summary judgment on these grounds.

With respect to Fair's motion to dismiss LeBlanc's claim of defamation, Magistrate Judge Tafoya concluded that LeBlanc had alleged sufficient facts to establish the elements of defamation, including a defamatory statement, publication to a third party, fault amounting to at least negligence, and damages. Recommendation at 28. Accordingly, she recommends that Fair's motion to dismiss the defamation claim be denied. I agree with this portion of the recommendation as well.

3. Fair's Objections

Fair's filings have had a tendency to be overlong and repetitious and his objections to the recommendation are no exception. Nonetheless, I have been able to distill the following arguments and categories of objections from the documents he filed in response to the recommendation: (1) there is no jurisdiction and/or Sportsman's Warehouse and LeBlanc do not have standing because they are not copyright holders or persons protected under the copyright law; (2) "Royal Entrance" was published and affixed with the symbol

9

"©" earlier than the Magistrate Judge recognized in the recommendation; (3) LeBlanc's Exhibit A-6 to his Motion for Summary Judgment (doc no 73-8) is not a maquette of "I'm the Boss" as he represents in his accompanying affidavit but actually a maquette of "Looking for Trouble," as evidenced by the photograph on the Angler Art website, and LeBlanc has made false representations to the Court in this regard; (4) LeBlanc's work is not copyrighted, and so he cannot copy or display his own work; (5) the Roden elk conveys aggression and challenge, like the concept of "Looking for Trouble," and therefore cannot be the model for "I'm the Boss," which concerns mating or sex; (6) Magistrate Judge Tafoya erred by relying on photographs instead of ordering that the sculptures themselves be produced for examination; (7) LeBlanc does not "dispute" that he attended certain art shows in 1995 and therefore could have seen "Royal Entrance" before he created the monumental "I'm the Boss;" (8) Magistrate Judge Tafoya applied the Copyright Act of 1976 instead of the Copyright Act of 1989 and relied on *Mazer v. Stein*, 347 U.S. 201, 218 (1954), which Fair claims was superseded by the Copyright Act of 1976; (9) LeBlanc's accusations in email (before litigation commenced) that Fair had infringed on LeBlanc's earlier work was wrongful because LeBlanc's works are not copyrighted; (10) the pose of "Royal Entrance" is original and protected and LeBlanc's use of the same pose is infringing; (11) Magistrate Judge Tafoya's conclusion will mean that authors of realistic wildlife sculpture will not be protected by copyright; (12) the only difference between the Roden maquette and the "I'm the Boss" monumental sculpture is the depiction of the flehmen response, which must have been copied from Fair's sculpture; (13) Fair was denied due process because certain documents were stricken because of his failure to follow the local rules of this court; and (14) Fair was denied due process of law because of his political

beliefs.

First, Fair's claim that this Court lacks jurisdiction or that LeBlanc and/or Sportsman's Warehouse lack standing is unavailing.[5] Fair appears to be operating under the assumption that an action relating to copyright can only be brought by a copyright holder pursuant to 17 U.S.C. § 411, and since neither Sportsman's Warehouse nor LeBlanc hold copyrights, there is no jurisdiction or cause of action. Fair misapprehends the nature of this case. LeBlanc and Sportsman's Warehouse seek a declaration of non-infringement. The federal declaratory judgment statute, 28 U.S.C. § 2201, vests a district court with the authority to declare the rights and other legal relations of any interested party in "a case of actual controversy" within the court's jurisdiction. Fair has accused both LeBlanc and Sportsman's Warehouse of infringing on his copyright, and indeed has apparently commenced litigation in Oregon. Therefore, there is an actual controversy between these parties and it is appropriate to declare the rights and obligations of the parties with respect to the infringement issue.

Moreover, I have jurisdiction pursuant to 28 U.S.C. § 1338, which gives the federal district courts original jurisdiction over any civil action "arising under any Act of Congress relating to . . . copyrights." This case clearly arises from federal copyright law, as it requires a determination of the validity of Fair's copyright on "Royal Entrance" as well as a determination of whether LeBlanc's sculptures infringe on any protectable elements of the copyrighted artwork. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044,

---

[5]Fair also uses this argument as the basis for his "Expedited Motion to Dismiss Under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted" (doc no 158).

11

1050-51 (10th Cir. 2006) (an action arises under Copyright Act, for purposes of subject matter jurisdiction pursuant to section 1338 if (1) complaint is for a remedy expressly granted by the Act, such as a suit for infringement, or (2) complaint asserts a claim requiring construction of the Copyright Act). It is of no import that Fair is a defendant rather than a plaintiff as the issues are the same as they would be had Fair initiated this action himself. Accordingly, these objections are overruled.

Fair devotes a significant portion of his objections arguing that the Magistrate Judge disregarded evidence he presented which established that he began to display "Royal Entrance" as early as January 1995. I am not persuaded that Magistrate Judge Tafoya disregarded this evidence but conclude that Fair's objection on this point is immaterial. It is undisputed that the Roden maquette was displayed and purchased in February 1994, which is earlier than the alleged first appearance of "Royal Entrance." Fair also appears to argue that "Royal Entrance" was copyrighted at its inception because he affixed a copyright symbol, "©", which appears in the cast bronze. Again, even if true, this is immaterial if the sculpture contains no original elements protectable by copyright.

I have already addressed the third general objection, which concerns whether the Roden maquette is the same as the maquette advertised on the Angler Art website entitled "Looking for Trouble." I agree with Fair that the sculpture displayed in the Angler Art website photograph is identical to the Roden maquette and to the photograph labeled "I'm the Boss" maquette (Exh. A-6 to LeBlanc Motion for S.J.). However, I disagree with Fair that there is any significant difference between this maquette and the monumental version of "I'm the Boss." The maquette contains the same physical and artistic elements as the monumental "I'm the Boss," including the position of the legs, back and head, antlers, as

12

well as facial expression and shape of the mouth and was clearly the model for the larger version. Accordingly, it is irrelevant whether the maquette recycled elements of an earlier sculpture such as "Looking for Trouble" or is now being sold as "Looking for Trouble;" all that matters is that LeBlanc conceived and created all the significant elements of "I'm the Boss" before Fair began working on "Royal Entrance." I also overrule Fair's fifth objection, that the Roden maquette could not have been the model for the monumental "I'm the Boss" because it shows aggression, not flehmen or physicality relating to sex and mating. As noted, the key elements LeBlanc's small and large sculpture are the same (and, moreover, are almost entirely dictated by the subject matter and nature); I disagree with Fair's assessment of the "meaning" of the maquette and larger sculpture.

The fourth set of objections arise from Fair's numerous statements referring to the "criminal" sculpture "Looking for Trouble" and his repeated emphasis that LeBlanc's sculptures are not copyrighted. Fair seems to be arguing that because LeBlanc has not copyrighted the three sculptures at issue here, LeBlanc cannot display or copy his own creations. See, e.g., Fair's Objection to Recommendation of United States Magistrate Judge (doc no 346) at 28 ("LeBlanc . . . violated Title 17 U.S.C. 106(1)(2)(3)(5) by failure to Copyright Notice, 1976 Title 17 U.S.C. 401, criminally and civilly, public display for sale, and LeBlanc currently violates the U.S. Copyright Act of 1976 criminally and civilly by public display of 1990 Monument 'Looking for Trouble' and by false allegation against Fair"). This argument distorts the copyright law. 17 U.S.C. § 106 provides that an owner under copyright has the exclusive right to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, to distribute copies of or display the copyrighted work; it does not mean that an artist who does not file a copyright registration is precluded

from reproducing, copying, displaying, or creating derivative pieces from his or her own work. Artists are not required to obtain copyrights and can do what they wish, within the law, with their own work. These objections are therefore overruled.

Fair's sixth objection is that Magistrate Judge Tafoya erred by not examining the actual sculptures before issuing her recommendation. I disagree. The photographs provided are adequate to make comparisons between the sculptures, with the exception of the photograph purporting to show the monumental version of "Looking for Trouble" (Exh. A-9 to LeBlanc's Motion for S.J.). They are also adequate for application of the "abstraction-filtration-comparison test," which shows that the elements Fair claims are protected are instead from LeBlanc's previous works or from the public domain, i.e., from the idea in nature of a bull elk displaying flehmen response. This objection is also overruled.

Fair's seventh set of objections appear to be intended to demonstrate that LeBlanc had access to "Royal Entrance" before LeBlanc created the monumental "I'm the Boss." Fair states several times that LeBlanc "does not dispute" that he attended several art shows in 1995 where "Royal Entrance" may have been displayed in clay or bronze form. However, Fair has the burden of demonstrating that LeBlanc had access to the piece and Fair offers no evidence of this. The closest he comes is a document entitled "Defendant and Cross-Defendant Steven George Fair's Notice of Correction and Supplemental Authority" (doc no 264), filed March 25, 2008. In that document, Fair contends that he was approached by another artist while at the C.M. Russell Auction in Great Falls, Montana in March 2008. *Id.* The unnamed sculptor allegedly told Fair that LeBlanc attended the Olsen Art Shows in Minneapolis/St. Paul Minnesota in April 1995 when "Royal Entrance" was

displayed. *Id.* This is inadmissible hearsay evidence that cannot be used to create a genuine issue of material fact under Fed. R. Civ. P. 56(e). Moreover, as discussed above, since it is undisputed that LeBlanc had already created a maquette substantially similar to the later monumental "I'm the Boss," his access to Fair's work in April 1995 is immaterial.

Fair also argues, in his eighth category of objections, that Magistrate Judge Tafoya applied the wrong law. This argument also fails. The statutory citations relied upon by Magistrate Judge Tafoya are to the current version of the United States Code and are accurate. In addition, *Mazer v. Stein*, 347 U.S. 201, 218 (1954), cited by Magistrate Judge Tafoya for several basic propositions regarding the scope of copyright protection, is valid law. Fair has not identified any legal authority that conflicts with the principles for which the case is cited.

With respect to the ninth type of objection, Fair makes much of statements made in heated email exchanges between Fair and LeBlanc before and after the commencement of this litigation. In one of them, LeBlanc states "Your piece is an infringement of my piece entitled Looking for trouble That won the best of Show and best sculpture in the 1986 Ducks Unlimited National show held in Kansas City. I would contend that is where you saw my work and did your own version of it." (Doc no 119-2 at p. 9). None of this is material or shows that Magistrate Judge Tafoya's analysis or recommendation is in error. LeBlanc has not asserted an infringement claim against Fair in this litigation and it is irrelevant that he once accused Fair of possibly copying his work. Fair also has not asserted a defamation claim against LeBlanc. The statements by LeBlanc do not contain any admissions or other evidence that he appropriated Fair's sculpture; rather, they contain

15

vehement denials as well as other strong disputes with Fair about numerous topics.[6] Fair's objections relating to LeBlanc's statements in the emails is therefore overruled.

Fair also argues that the pose of "Royal Entrance" is original and protected. Although numerous original elements, including pose, could be protected by copyright under some circumstances, since LeBlanc independently created a sculpture of an elk in the same pose before Fair, this element is not protected. Fair's tenth objection is overruled.

Fair's eleventh type of objection is his concern that a finding of non-infringement means that authors of realistic wildlife art will not be protected by copyright. However, as Magistrate Judge Tafoya noted, a copyright provides limited protection and its primary purpose is to promote originality. It is clear that Fair is a skilled artist with a passion for his work. However, the United States Supreme Court has already rejected the notion that skill and hard work suffice for copyright protection. *Feist*, 499 U.S. at 359-60. Fair's very talent for accurately recreating what exists in nature results in his works receiving "thin" copyright protection, "comprising no more than his original contribution to ideas already in the public domain." *Satava*, 323 F.3d at 812. Fair's copyright means that others cannot reproduce his work exactly (and may protect original elements not at issue in this case), but it does

---

[6]Fair also contends that a statement by LeBlanc shows LeBlanc's alleged willingness to copy Fair's work. Specifically, in one email, LeBlanc pointed out, "You will also find that there are and have been made tons of elk sculptures done in that pose I know of 3 that I saw last week end. It is like a eagle fishing a fish out of the water. They are everywhere. Your copyright protects you from someone taking your piece and pouring a mold off of it." (Doc no 119-2 at p. 8). These are essentially correct statements of the law of copyright regarding realistic wildlife depictions and do not, as Fair asserts, show that LeBlanc believes he could copy the work other artists without restriction.

not give him a monopoly on portraying subjects that occur in nature or aspects of animals that naturally result from their physiology, behavior, or environment.

Fair also appears to argue that the Roden maquette is not the model for "I'm the Boss" because it does not portray the flehmen response. Again, even if there is a dispute in this regard, it need not be resolved to make a determination of non-infringement. The physiology and attitude of an elk in flehmen is in the public domain and cannot be protected by copyright. Accordingly, even if the only significant change between the 1994 maquette and the monumental sculpture of "I'm the Boss" were the addition of the flehmen response, it would still not support a claim of infringement.

Finally, Fair's thirteenth and fourteenth objections repeat assertions that have appeared throughout his filings in this Court. Fair was warned repeatedly that he had to follow Federal Rules of Civil Procedure and the local rules of this Court and when his filings failed to conform they were stricken. Fair has not demonstrated that the analysis of the copyright infringement issue would be any different had those documents not been stricken and so this objection is overruled. Similarly, Fair has presented many pages filled with his views on federal authority, much of it incomprehensible and irrelevant to these proceedings. Again, Fair has not demonstrated any denial of due process or shown that his political views have had any effect on the infringement analysis here.

### 4. LeBlanc's Defamation Claim

A declaration of non-infringement disposes of the primary issue in this case and resolves the claim by Sportsman's Warehouse against LeBlanc and Fair, as well as one of LeBlanc's cross claims against Fair. This leaves pending LeBlanc's remaining cross claim of defamation against Fair, a claim based on state law. Magistrate Judge Tafoya did

17

not specifically address whether this claim should be retained in this Court. Although LeBlanc and Fair are residents of different states and are therefore diverse for the purposes of 28 U.S.C. § 1332, it does not appear that the amount in controversy is sufficient to confer jurisdiction on this Court to hear the case. Given the dismissal of the federal copyright question, I conclude that I have discretion to dismiss the defamation claim. "[T]he pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law claim." *McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006); 28 U.S.C. § 1367(c)(3); *see also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because LeBlanc's cross claim primarily involves facts unrelated to the infringement analysis and concerns state law principles, including possibly choice of law questions since both Oregon and Colorado could have an interest in the issue, it appears that judicial efficiency and comity support dismissal of the defamation without prejudice.

Accordingly, it is ordered:

1. The recommendation (doc no 338) of Magistrate Judge Kathleen M. Tafoya is accepted as modified.

2. Defendant and Cross-Claimant Stephen C. LeBlanc's Motion for Summary Judgment (doc no 73) and Plaintiff Sportsman's Warehouse, Inc.'s Motion for Summary Judgment (doc no 271) for declaration of non-infringement are

18

granted. For the reasons stated, it is hereby declared and decreed pursuant to 28 U.S.C. § 2201 that the two elk sculptures created by LeBlanc and acquired by Sportsman's Warehouse entitled "I'm the Boss" and "The Challenger" do not infringe on any copyright-protected elements of Defendant Steven G. Fair's elk sculpture "Royal Entrance."

3. LeBlanc's Motion for Order Setting Oral Argument on Motion for Summary Judgment (doc no 151) is denied as moot.

4. Fair's Expedited Motion to Dismiss under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted (doc no 158), Fair's First Amended Expedited Motion to Dismiss under FRCP 12(b) for Want of Jurisdiction and for Failure to State a Claim Upon Which Relief May be Granted (doc no 231), and Fair's Motion to Dismiss Cross Claimant LeBlanc's Complaint of Defamation for Failure to State a Claim Upon Which Relief May be Granted Pursuant to FRCP Rule 12(b)(6) (doc no 289) are denied.

5. Fair's Motion for Declaratory Judgment of Infringement (doc no 224) is denied.

6. LeBlanc's Motion to Strike Defendant/Cross Defendant Fair's Motion for Declaratory Judgment of Infringement (doc no 227) is denied.

7. LeBlanc's Motion to Quash Subpoenas (doc no 201) is granted.

8. All remaining motions are denied as moot.

9. LeBlanc's defamation cross claim against Fair is dismissed without prejudice.

10. LeBlanc and Sportsman's Warehouse may have their costs.

DATED at Denver, Colorado, on August 5, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge